MAXX LYMAN, on behalf of himself and　　:
others similarly situated,　　　　　　　　 :
　　　　　　　　　　　　　　　　　　　　 :
　　　　　Plaintiff,　　　　　　　　　　　 :
　　　　　　　　　　　　　　　　　　　　 :
v.　　　　　　　　　　　　　　　　　　　 :
　　　　　　　　　　　　　　　　　　　　 :
EXCEL IMPACT, LLC,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　 :
　　　　　Defendant.　　　　　　　　　　　:
_____/

**MEMORANDUM OF PLAINTIFF IN OPPOSITION TO
MOTION TO BIFURCATE**

Plaintiff Maxx Lyman opposes bifurcation. This case is no different than the typical

TCPA class action cases, which are generally not bifurcated. Furthermore, bifurcation potentially

presents a substantial prejudice to the Plaintiff. The motion should be denied.

**I.　　DEFENDANT'S MOTION SHOULD BE DENIED BASED ON THE EXISTING
　　　SCHEDULING AND DISCOVERY PROCEDURES ORDERS.**

**A.　　The motion expressly conflicts with Judge Bloom's Scheduling Order.**

One of the many problems for Defendant Excel Impact, LLC ("Defendant" or "Excel")

with its current request is that Judge Bloom was apprised of and considered Defendant's

proposal of bifurcating "class" discovery and delaying class certification and then expressly

ordered the opposite. In the Joint Scheduling Report submitted in advance of the Court's

Scheduling Order, the Defendant recommended staging discovery to provide for so-called

"individual" discovery before so-called "class" discovery.  (Doc. 8 at pp. 2-3.) Despite

Defendant's position, on November 14, 2023, this Court entered its Scheduling Order, ordering

just the opposite of Defendant's proposal, namely frontloading and expediting class discovery by

requiring that must be completed before May 9, 2024 and class certification by May 23, 2024, with any additional merits discovery not closing until August. (Doc. 11 p. 2). The Judge, therefore, didn't punt on the issue; she addressed it and chose the opposite. For that reason alone, the motion should be denied. *See, e.g., Rodriguez v. ALG Vacations Corp.*, No. 6:22-cv-2337-PGB-LHP, 2023 U.S. Dist. LEXIS 63033, at *5-6 (M.D. Fla. Apr. 11, 2023) (denying motion to bifurcate that conflicts with a scheduling order issued by the District Judge); *Davis v. Coast Dental Servs., LLC,* No. 8:22-cv-941-KKM-TGW, 2022 U.S. Dist. LEXIS 184992, at *3 (M.D. Fla. Sept. 1, 2022) (same).

B. **The motion conflicts with the Court's local rules and procedures.**

Defendant's motion also runs afoul of this Court's discovery procedures and local rules. Defendant's arguments in the motion amount to a thinly veiled discovery motion. Defendant contends that the motion was needed because "there is a fundamental dissonance between the facts of this case and the class discovery that Plaintiff is currently pursuing" and that Plaintiffs' class wide discovery on Defendant is a "burdensome fishing expedition." (Doc. 20 p. 2.) Defendant's motion then makes relevancy objections to discovery requests already upon it— objections which Defendant *has not yet even made in response to Plaintiff's discovery requests* other than Defendant simply generally asserting call records are not relevant to the Plaintiff's claims. (*See id.* (alleging Plaintiff is "[engag]ing in a fishing expedition where they seek data on every individual that Excel has called, regardless of whether the calls were specifically invited (and falling outside the class definition).") Indeed, an entire section of Defendant's brief is entitled "Plaintiff Issues Written Discovery and Third Party Subpoenas Seeking Class Discovery Beyond the Scope of the Class Definition and a Certifiable Class," and in the argument that follows, Defendant complains about the relevancy of discovery requests on a third party named

DRIPS that Defendant contends seek irrelevant and overbroad discovery because, according to Defendant, those are made "regardless of whether there is any connection with any member of the class." (*Id.* pp. 6-7.)

Defendant's motion is nothing if not a "discovery motion." If Plaintiff takes the bait on such arguments to explain relevancy and overbreadth issues, Plaintiff will by definition be engaging in written motions practice on a discovery dispute, the very practice that the Court has instructed the parties *not to so engage in.* (Doc. 15.) In short, Defendant's motion is an attempt to short circuit the Court's procedures.

> C. **The motion is impetuous and based on conjecture.**

Defendant asks the Court to re-write Judge Bloom's schedule based on speculation that an already served subpoena on third party Verizon will tie a so-called written "consent" to the Plaintiff. Defendant advances this argument on the thinnest of threads. Defendant rests its motion on a so-called written consent not in the name Maxx Lyman, but from a "Phil scneider." (Screenshots from ActiveProspect TrustedForm, attached hereto as Exhibit 1.) The consent is not from a person in North Dakota where Plaintiff resides, but instead from a resident of Massachusetts. (*Id.*) The consent then includes an email address that is not for Maxx Lyman and in fact includes the last name "schneider": pschneider@gmail.com. (*Id.*) The date of birth is wrong. And the income is wrong. All of that was explained to defense counsel shortly before suit was filed. (Oct. 10, 2023 Email, attached hereto as Exhibit 2.) As pled in the Complaint, in texts, Defendant also addressed Plaintiff as "Phil." (Doc. 1 ¶ 33.) And, in the Complaint, Plaintiff denied providing consent. (*Id.* ¶ 21.)

The Court can view the consent form online, with the first page stating where the consent originated and at the bottom of the first page, a green button entitled "view session replay"

providing access to a simulation of the completion of the form. Clicking on that button takes you to a video of the consent application being filled out, which can be started by the play arrow on top of the consent page:

https://cert.trustedform.com/b8b713a5cec58a05ab14a674c14cf2a37f612937?shared_token=U0c5dGRXOWhlRVZqWjNaa1ZHOVlURWRFUzFNelRVRXJNbFZwVDJKNVZtdDJPRWRIY1VoTWJGWjJPVWMyUldWR2VsTm5Uell5ZDFWV1pHZ3pVa3RTTUU1bVZ5dGFWVGgwUjJseE9XbFJSMWRPWml0a2JsWnFRVXRJVVN0eVpuRjVjR0Y1WVZZodFJETnlNRGc5TFMxT1ZqVTFOM0pyVkUxbFoyUnhNV1J2YkUxcFVsVjNQVDA9LS0zYTQxZTcxYzU2N2Q1MGE5NDY0M2IzZjBiMWU4NDhkZGNjNGFlM2E1 (last visited Dec. 20, 2023).

The Court should not entertain the motion to upend the existing schedule based on such a paper-thin basis. Indeed, it is difficult to understand why Defendant filed this motion in the face of such discrepancies, without first having received a response from Verizon to its subpoena.

## II.     THE MOTION ALSO FAILS BECAUSE BIFURCATION IS NOT EFFICIENT AND IS PREJUDICIAL.

### A.     Defendant's mistaken belief that it will prevail on either a bona fide error defense or the defense of consent is not grounds to stage discovery in phases.

"Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See* 47 C.F.R. § 64.1200(c)(2); 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019). The

TCPA exempts from its scope telemarketing calls made with a consumer's "prior express invitation or permission." 47 C.F.R. 64.1200(c)(ii). "Such permission must be evidenced by a signed, written agreement <u>between the consumer and seller</u> which states that the consumer agrees to be contacted by <u>this seller</u> and includes the telephone number to which the calls may be placed." *Id.* (emphasis added).

TCPA rules articulate minimum standards for company-specific DNC compliance, including certain consent and the so-called bona fide error safe harbor upon which Defendant hopes to rely. Those provide:

> Any person or entity making telephone solicitations (or on whose behalf telephone solicitations are made) will not be liable for violating this requirement if:
>
> (i)  It can demonstrate that the violation is the result of error and that as part of its routine business practice, it meets the following standards:
> (A)  Written procedures. It has established and implemented written procedures to comply with the national do-not-call rules;
> (B)  Training of personnel. It has trained its personnel, and any entity assisting in its compliance, in procedures established pursuant to the national do-not-call rules;
> (C)  Recording. It has maintained and recorded a list of telephone numbers that the seller may not contact;
> (D)  Accessing the national do-not-call database. It uses a process to prevent telephone solicitations to any telephone number on any list established pursuant to the do-not-call rules, employing a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is made, and maintains records documenting this process.
> (E)  Purchasing the national do-not-call database. It uses a process to ensure that it does not sell, rent, lease, purchase or use the national do-not-call database, or any part thereof, for any purpose except compliance with this section and any such state or federal law to prevent telephone solicitations to telephone numbers registered on the national database. It purchases access to the relevant do-not-call data from the administrator of the national database and does not participate in any arrangement to share the cost of accessing the national database, including any arrangement with telemarketers

> who may not divide the costs to access the national database among various client sellers; or
>
> (ii) It has obtained the subscriber's prior express invitation or permission. Such permission must be evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed; or
>
> (iii) The telemarketer making the call has a personal relationship with the recipient of the call.

47 C.F.R. § 64.1200(c).

Phasing discovery in the way Defendant proposes because of Defendant's hope to prevail on affirmative defenses doesn't make sense in this case. Bifurcation of such discovery is often "counterproductive." Manual For Complex Litigation (Fourth) § 21.15 (2015). That is readily apparent here. The proposed staging of discovery guarantees that the parties will need to duplicate their work. First, the parties would undertake "individual merits" discovery and all that entails: written discovery requests, depositions, and then expert disclosures and expert depositions, all limited just to the two affirmative defenses of consent and bona fide error. Then, Defendant would file a dispositive motion. And then, should the Court deny that motion, the parties have to start all over again, serving discovery requests and taking depositions of the same witnesses a second time, but this time focusing on class certification and/or class merits issues, as well as the remaining issues on Plaintiff's individual claim. And after that, there would be a second round of dispositive motions on the class claims. All told, this means at least two rounds of written discovery, two rounds of depositions (with the same witnesses being deposed twice), and then two rounds of summary judgment briefing. This is the opposite of judicial economy. Indeed, "bifurcation of discovery in this case will increase litigation expenses by protracting the discovery period and by duplicating the discovery process, including the depositions." *Hartley-*

*Culp v. Credit Mgmt. Co*, No. 3:CV-14-0282, 2014 U.S. Dist. LEXIS 130308, at \*10 (W.D. Pa. Sept. 15, 2014). The Court should deny the motion to bifurcate for that reason alone.

So too, courts have declined to bifurcate discovery where the issues to be raised in the proposed phases are so intertwined that it would not be in the interest of judicial economy to conduct discovery on them separately. Early this year, for example, the Middle District of Florida in *Morris v. Lincare, Inc.,* No. 8:22-cv-2048-CEH-AAS, 2023 U.S. Dist. LEXIS 206052 (M.D. Fla. Nov. 17, 2023), refused to bifurcate discovery under the TCPA despite the defendant's contention that it could prove consent, finding:

> [T]he distinction between merits and class issues is often "murky at best, and impossible to discern at worst." 2011 U.S. Dist. LEXIS 16684, 2011 WL 486123 at \*2. The Court is not persuaded that the class and merits issues in this action are unusually distinct, such that there would be little to no overlap between the phases of discovery. Indeed, the issue of consent and method of obtaining purported consent is relevant to the Plaintiff as well as the class. In short, the circumstances do not warrant a deviation from this District's general practice of disfavoring bifurcation.

*Id.* at \*5-7 (quoting *Lakeland Reg'l Med. Ctr., Inc. v. Astellas US, LLC*, No. 8:10-cv-2008-T-33TGW, 2011 U.S. Dist. LEXIS 16684, at \*2 (M.D. Fla. Feb. 7, 2011); *see also EQT Prod. Co. v. Terra Servs., LLC*, No. 14-1053, 2014 U.S. Dist. LEXIS 203680, at \*4 (W.D. Pa. Oct. 21, 2014) ("Terra's proposal would likely result in deposing the same witnesses twice—once in the liability phase, and again in the damages phase. This is the definition of inconvenience, and the additional cost of duplicative depositions and document review combine to counsel against bifurcation in this case.").

Not surprisingly, staging discovery in TCPA cases to allow a defendant to first address affirmative defenses is not the norm in this District. For example, in *Henderson v. Safeguardcasualty.com Inc.*, No. 0:18-60258-KMM (S.D. Fla.), the defendant similarly moved to

bifurcate discovery asserting the affirmative defense of consent after entry by this Court of a

scheduling order, and the plaintiff opposed bifurcation, correctly noting that:

> [W]hether Defendant obtained prior express consent through these means is not an individualized issue that only pertains to Plaintiff. This claim flows from the same conduct that purports prior express written consent for all other Class members; therefore, it is a class-wide issue, making bifurcated discovery on this issue unnecessary, complicated and prejudicial. Further, Defendant's proposal to delay class certification discovery until after the merits are resolved is improper because it both risks mooting Plaintiff's class claims if she prevails on summary judgement and also creates the possibility of one-way intervention, which courts seeks to avoid. *See London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1252-53 (11th Cir. 2003).

*Id.* at Doc. 38 p. 2 (Aug. 17, 2018).

This Court agreed with the plaintiff's position and held:

> THIS CAUSE came before the Court upon Defendant's Motion to Bifurcate Discovery and Plaintiff's Response in Opposition to Defendant's Motion. Defendant requests that the Court establish a two-phased discovery schedule that bifurcates discovery of (1) the merits of Plaintiff Yvonne Henderson's individual claim and (2) class discovery. Further, Defendant requests that this court limit initial discovery, establish a summary judgment briefing deadline, and stay other proceedings until threshold liability issues are resolved. Plaintiff argues that Defendant's request to bifurcate discovery will only serve to delay the proceedings and ensure an unnecessary expenditure of time and other resources by the Parties. UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, Defendant's Motion to Bifurcate Discovery is DENIED. The Parties shall comply with the Court's Paperless Order Scheduling Trial.

*Id.* at Doc. 39 (Aug. 30, 2018).

This Court's reasoning and holdings in *Henderson* are equally applicable here. The

affirmative defenses at issue of consent and bona fide error apply to all putative class members,

and indulging Defendant's request at this stage of the litigation will only serve to delay the case

and will result in wasting judicial and party resources. For example, Defendant's reference to a

bona fide error safe harbor, by definition, is going to include overlapping "class" and "individual" discovery because Defendant must demonstrate it placed the call in error despite routine business practices intended to prevent violations of the Do Not Call List and that it internally and properly maintained lists and practices to prevent violations. To that end, Defendant provides a self-serving affidavit from Dan Lily, who purports to testify that Excel does not engage in cold calling, stating, "All calls by or on behalf of Excel are in response to requests to be called submitted on the Excel Sites." Yet, despite the fact that Plaintiff has not been able to engage in discovery to challenge such testimony, there already evidence contradicting such a statement. In *Cole v. MG LLC, et. al,* No. 3:23-cv-01083 (M.D. Tenn.), a TCPA class action recently filed in the United States District Court for the Middle District of Tennessee against a customer of Excel, Excel's Vice President Ian Bouchard admitted to the opposite. (Declaration of Ian Bouchard, attached hereto as Exhibit 3, ¶¶ 2-10.) There, Bouchard conceded that Excel actually uses third party vendors with whom it has been unable to exercise control and who do engage in cold calling, even in violation of agreements with Excel's own customers.  (*See id.* ¶ 10 ("Upon further investigation, Affiliate disclosed the use of a sub-affiliate in connection with the Cole Call and that such sub-affiliate initiated the Cole Call as an outbound call in apparent violation of the Affiliate's agreement with the sub-affiliate.").)

The artificial distinction between class discovery and individual discovery, therefore, is likely going to give rise to innumerable fights over what is "class" discovery versus what is "individual merits." Plaintiff contends that Defendant's business practices and its experiences and treatment of other consumers are front and center in the discovery as to the "individual" claim. Are we now going to address whether discovery related to the process for complying with the TCPA is general class discovery or individual merits discovery? Similarly, are records of all

other submissions to the website relied upon by Excel that it intends to assert led to the purported

consent for the calls class discovery or merits discovery? Likewise, are the web server logs

showing the various sources of traffic to its website merits discovery or class discovery?  In

short, given this overlap, bifurcation would "belie principles of judicial economy, as the Court

may be forced to spend time and resources resolving discovery disputes over what is 'merit'

discovery as compared to 'class' discovery." *In re Plastics Additives Antitrust Litig.*, No. 03-

2038, 2004 U.S. Dist. LEXIS 23989, at *9 (E.D. Pa. Nov. 29, 2004) (citing *In re Hamilton*

*Bancorp. Inc. Securities Litig.,* No. 01-CIV-0156-GOLD/SIMONTON, 2002 WL 463314, at *1

(S.D. Fla. Jan. 14, 2002) (noting that 'bifurcation of discovery may well-increase litigation

expenses by protracting the completion of discovery, coupled with endless disputes over what is

'merit' versus 'class' discovery')). The inevitable disputes about what qualifies as individual

merits versus class discovery is, therefore, another reason to deny the request for bifurcation. As

another court held while denying a similar request for bifurcation of discovery:

> In fact, bifurcation would have the opposite effect. Much of the discovery sought appears relevant to both the class and individual claims, including documents concerning Plymouth's telemarketing scripts, policies, contracts, practices and procedures, complaints received, investigations of those complaints and audits of third-party providers, as this information is relevant to the issues of both vicarious liability for third-party conduct and willfulness. *Accord* DE [25] (Defendant arguing that it has a "strong defense" because it cannot be held "vicariously liable" for the conduct at issue as it relates to Plaintiff and recognizing the difference in recovery for a "willful" violation of the statute).

*Charvat v. Plymouth Rock Energy, LLC*, No. 15-CV-4106 (JMA) (SIL), 2016 U.S. Dist. LEXIS

6778, at *6-7 (E.D.N.Y. Jan. 12, 2016). Accordingly, the evidence indicates not that bifurcating

discovery would be an efficient way of conducting this litigation but instead that it will result in

needless delay. *See also* Notes of Advisory Committee on 2003 Amendments to Fed. R. Civ.

Pro. 23(c)(1)(A) ("Active judicial supervision may be required" to avoid "an artificial and ultimately wasteful decision between 'certification discovery' and 'merits discovery.'"). As another court ruled when denying a motion to bifurcate in a TCPA case earlier this year:

> The Court has reviewed the parties' joint status report. The Court does not see a need to bifurcate discovery in this case. There will be some overlap in discovery here. Discovery as to commonality and typicality under Rule 23 will also apply to the merits of the claim. Moreover, the Supreme Court in Walmart v Dukes has said the district court must conduct a rigorous analysis in determining class certification and that will often require some evaluation about facts that go to the merits of a plaintiff's underlying claims. Thus, bifurcating discovery often does not make sense as the lines between "class discovery" and "merits discovery" are significantly blurred.

*See Katz v. Allied First Bank, SB*, No. 22-cv-5277, Doc. 14 (N.D. Ill. Jan. 3, 2023).

### B. __Defendant offers no showing of any burden.__

Defendant fails to articulate any undue burden warranting the phasing of discovery. Defendant only vaguely claims that it will incur burdens and costs in responding to Plaintiff's discovery requests but provides no indication as to the specific type of burden it will suffer or the number of documents its attorneys will have to review or produce for production. Tellingly, Defendant attached a single declaration in support of its Motion, and that says nothing about the supposed burden or cost Defendant would incur in responding to Plaintiff's discovery requests. Much more is required from Defendant to overcome the general rule against bifurcating discovery. Plaintiff, on the other hand, will be severely prejudiced because he will be unable to obtain discovery necessary to move for class certification by the Court's deadline.

### C. __Defendant's proposed schedule prejudices Plaintiff and violates the One-Way Intervention Rule.__

Defendant proposes a compressed schedule to the Court that prejudices Plaintiff and that it never inquired with Plaintiff about. Defendant now proposes expediting "individual" merits

discovery, consent and bona fide error discovery, requiring completion by February 27, 2024. That would be extremely prejudicial to Plaintiffs and conflicts not simply with the Court's Order, but even with the July 2024 deadline and time frame the parties agreed upon in the Joint Scheduling Order. (Doc. 8 pp. 2-3.) In short, when one considers the holidays and the time needed for the Court to rule, and despite that prior agreement of the parties and Court's Order, Defendant now proposes to provide Plaintiff with effectively less than two months to complete all written discovery requests, depositions, and then expert disclosures and expert depositions, all limited just to the two affirmative defenses of consent and bona fide error. None of this has been contemplated before in this case, and it would not be reasonable.

Bifurcation of discovery is also prejudicial to Plaintiff's discovery of class information from third parties and amplifies the risk that evidence will be lost or destroyed. *Lathrop v. Uber Techs., Inc.*, No. 14-CV-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) (plaintiffs in putative class action may "suffer prejudice from a stay because the case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate"). Here, Excel has already demonstrated that it used third parties to contact class members and has provided a declaration in another case that it also used different third parties. The parties will need to gather that information from those third parties expeditiously to ensure it is preserved.

The risk to the putative class members' interests is not merely hypothetical. Multiple decisions have turned on the destruction of telephone records. For example, in *Levitt v. Fax.com*, No. 05-949, 2007 WL 3169078, at *2 (D. Md. May 25, 2007), the court denied class certification in a TCPA fax case because "critical information regarding the identity of those who received the facsimile transmissions" was not available. Likewise, in *Pasco v. Protus IP Solutions, Inc.*, 826 F.

Supp. 2d 825, 831 (D. Md. 2011), the court was compelled to grant the defendant's motion for summary judgment where Mr. Pasco was unable to obtain the "transmission data on which to support their claims that [the defendant] sent them the unsolicited faxes at issue."

As a result, courts regularly permit plaintiffs to commence discovery prior to a Fed. R. Civ. P. 26(f) conference related to class issues implicating non-parties in TCPA cases, such as entities that have calling data. *See, e.g.*, *Cooley v. Freedom Forever LLC*, No. 2:19-cv-562, Doc. 37 (D. Nev. July 19, 2019); *Cooley v. First Data Merchant Servs., LLC*, No. 19-cv-1185, Doc. 32 (N.D. Ga. July 8, 2019). In denying a motion to stay, another federal court considered this issue in a TCPA case:

> In addition, Orangetheory has not demonstrated irreparable injury; it notes only that it is potentially on the hook for substantial damages, given the putative nationwide class. Monetary damages, of course, do not by themselves constitute irreparable injury.
>
> Simon, on the other hand, persuasively argues that she would be injured by a stay, particularly because discovery has yet to commence, and evidence is at risk of being lost. This injury, which is both likely and irreparable, far outweighs the injury posed by a potential future judgment for money damages.
>
> * * *
>
> In the meantime, it is clear that critical evidence, including records from any third parties that Orangetheory may have contracted with for its telephone marketing, may be lost or destroyed.

*Simon v. Ultimate Fitness Grp., LLC*, No. 19-cv-890, 2019 U.S. Dist. LEXIS 147676, at *18, 21-22 (S.D.N.Y. Aug. 19, 2019). Here, Plaintiff is simply seeking to proceed in the ordinary course.

Finally, Defendant's proposed sequencing of this action violates the one-way intervention rule and provides an independent basis to deny the requested bifurcation. "'One-way intervention' occurs when the potential members of a class action are allowed to 'await … final judgment on the merits in order to determine whether participation [in the class] would be favorable to their

interests.'" *American Pipe & Constr. Co. v. State of Utah*, 414 U.S. 538, 547 (1974). Rule 23(c)(2)'s requirement that in opt-out class actions, notice be given to all class members as soon as practicable "clearly contemplates that the notice requirement will be met before the parties are aware of the district court's judgment on the merits" and was intended by Congress to prevent one-way intervention. *Schwarzschild v. Tse*, 69 F.3d 293, 296 (9th Cir. 1995). In keeping with this rule, courts have held that, in general, issues relating to class certification should be decided before a decision on the merits is rendered. *Villa v. S.F. Forty-Niners, Ltd.*, 104 F. Supp. 3d 1017, 1021 (N.D. Cal. 2015) (denying partial motion for summary judgment prior to class determination as procedurally improper); *Licari Fam. Chiropractic Inc. v. eClinical Works, LLC*, No. 8:16-cv-3461-MSS-JSS, 2019 U.S. Dist. LEXIS 104634, at *3 (M.D. Fla. Feb. 26, 2019) (same).

"There is authority that when a district court decides a motion for summary judgment before a class has been certified, that decision will not bind putative class members." *Mendez v. Radec Corp.*, 260 F.R.D. 38, 46 (W.D.N.Y. 2009). Therefore, Excel's request to sequence merits discovery (including issues that clearly apply to the class, like the determination of Excel's safe harbor) before class discovery unnecessarily violates the one-way intervention doctrine.

There is no basis for casting aside a schedule already approved by the Court in favor of a schedule that the parties themselves previously rejected.

III.     **CONCLUSION**

For all the above reasons, the Court should deny the Motion to Bifurcate.

Respectfully submitted,

**/s/ Geoffrey J. Moul**
Geoffrey J. Moul (92496)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0403
Email: moul@mmmb.com

*Counsel for Plaintiff Maxx Lyman*

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2023, I caused the foregoing document to be filed

via the Court's CM/ECF system which will effect service on all counsel of record.

**/s/ Geoffrey J. Moul**
Geoffrey J. Moul