MAXX LYMAN, on behalf of himself and : 
others similarly situated, :
 :
      Plaintiff, :
 :
v. :
 :
EXCEL IMPACT, LLC, :
 :
      Defendant. :

                            /

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM AND SUPPLEMENTAL DOCUMENTS IN OPPOSITION TO EXCEL'S MOTION TO BIFURCATE

In its Motion to Bifurcate Discovery, Defendant Excel Impact, LLC stated that "[w]hile Plaintiff Maxx Lyman has indicated that he did not provide the consent at issue, the resolution of that factual query will be dispositive of both the individual and class wide issues." (Doc. 20 p. 1.) Despite obvious defects on the face of the so-called consent, Defendant filed the motion before awaiting a response to a previously served "simple subpoena on Verizon [to identify the owner of the IP address related to the consent form], which could establish whether Plaintiff, or another party acting on his behalf, specifically requested the calls." (*Id.* at p. 2.) Likewise, Defendant on reply stated the Verizon documents would reveal if "Plaintiff himself submitted the request under an alias (and while potentially in Massachusetts despite his residence in North Dakota) or otherwise caused an individual to submit the request on his behalf," making it a point to emphasize that "as Plaintiff freely acknowledges, the forthcoming subpoena response from Verizon will likely provide *much needed clarity to all parties regarding the consent record.*" (Doc. 29 p. 5 (emphasis added).)

The response from Verizon has now arrived to resolve the "factual query" that Defendant claimed was "dispositive." Indeed, the Verizon records amplify the lack of bona fides to Defendant's motion (and consent defense and bona fide error defense) and dispositively establish that the Defendant's motion is premised on a fraudulent consent, explaining its opposition to leave to submit. First, the Verizon records reveal Defendant's rank speculation that Maxx Lyman used an alias by drafting the "consent" from "Phil scneider" (a theory which was bizarre as it required the Court to believe Mr. Lyman used an alias but mistakenly his own Massachusetts cell number).[1] As set forth in the Verizon records, the "Phil scneider" consent came—not from Mr. Lyman—but from an IP address associated with a person named Gregg Brodsky of Lexington, Massachusetts—the same city identified in the online consent form. (*See* Exhibit 1, attached hereto.) Second, the Verizon records defeat Defendant's unsupported allegations that Mr. Lyman may have been in Lexington, Massachusetts and not Fargo, North Dakota on August 30, 2023, as the phone records demonstrate that he was in Fargo, North Dakota, originating calls in Fargo on that date. (*See* Exhibit 3, attached hereto.) Thirdly, the identification of Mr. Brodsky by Verizon demonstrates how unfounded Defendant's suggestion is that Mr. Lyman used someone else to complete a consent form. Mr. Lyman does not know Gregg Brodsky and didn't authorize him to provide consent to call Mr. Lyman's number. (*See* Exhibit 2, attached hereto.) Defendant's speculation doesn't make any sense in this context. If Mr. Lyman wanted someone to complete a consent form for him to contact him to sell him health insurance as Defendant contends, it wouldn't be someone he doesn't know, and it would serve no purpose for Mr. Lyman to have that unknown person prepare a consent form for Mr. Lyman

---

[1] Mr. Lyman's cell number has a Boston area prefix because he has family there; he is on his grandmother's bill, who lives in the Boston area and pays his cell phone bill to assist him as a single father.

using the wrong name, wrong address, wrong age, wrong email, wrong everything, except a phone number.

In short, the Verizon materials sought by Defendant do resolve the baseless "factual query" proffered by Defendant. Those records affirm that there was (and is) no bona fide consent or error, so there could be no compelling reason to believe that bifurcating discovery so as to first proceed on affirmative defenses would be productive or fair. Instead, it would be counterproductive. The only evidence of Defendant's so-called bona fide practices indicates that Defendant engages in robocalls to sell health insurance and then advances "consent" as a justification for its actions despite compelling evidence consent is fake. The supplemental materials, therefore, affirm that bifurcating discovery will do nothing other than delay this matter and generate a series of discovery disputes over Plaintiff's efforts to gather Defendant's records of its history of engaging in robocalls with knowledge that it is relying on bogus consent, which discovery will overlap with discovery of class-wide issues. This memorandum and the motion related to the same are proof of that. Tellingly, Defendant opposed this submission to the Court of the Verizon material that it subpoenaed and used as a basis to seek bifurcation, requiring Plaintiff to file a motion rather than agreeing it could be submitted.

Respectfully submitted,

**/s/ Geoffrey J. Moul**
Geoffrey J. Moul (92496)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0403
Email: moul@mmmb.com

*Counsel for Plaintiff Maxx Lyman*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2024, I caused the foregoing document to be filed via

the Court's CM/ECF system which will effect service on all counsel of record.


**/s/ Geoffrey J. Moul**
Geoffrey J. Moul